(65 South. 263)

No. 19980.

ROMERO et al. v. ROMERO.

(April 27, 1914. Rehearing Denied May 25, 1914.)

(Syllabus by the Court.)

1. EXECUTORS AND ADMINISTRATORS (§ 20*)— APPOINTMENT — CONFIRMATION — PRESUMPTIONS.

Where the probate record shows a preliminary order for an inventory, and for notice by

─────────

[1]Ante, p. 269.

publication of an application for administration, and it is admitted that the applicant qualified, and that it is shown that he for many years administered the succession without objection from any quarter, *held*, that the existence of a final order confirming the appointment will be presumed, in the absence of positive and convincing evidence to the contrary.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 83–105; Dec. Dig. § 20.*]

2. DESCENT AND DISTRIBUTION (§ 69*) — GUARDIAN AND WARD (§ 165*)—HOMOLOGATION OF TUTOR'S ACCOUNT—ACTION BY FORCED HEIRS.

Where a judgment, based on an inventory in a tutorship, was rendered, homologating a tutor's final account, showing a certain balance due his ward, the tutor and his heirs are concluded by said judgment, and an action to annul the same on the ground of error or fraud was prescribed by one year from the date of the judgment. The action of forced heirs to annul contracts of those from whom they inherit is restricted to "simulated contracts." Civ. Code, art. 2239.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 208–212; Dec. Dig. § 69; Guardian and Ward, Cent. Dig. §§ 531–537; Dec. Dig. § 165.*]

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by Lelia Romero, wife of Joseph Miguez, and others against Garcia Romero. Judgment for defendant, and plaintiffs appeal. Affirmed.

Weeks & Weeks, of New Iberia, for appellants. Cammack & Broussard and L. O. Hacker, all of New Iberia, for appellee.

LAND, J. The plaintiffs in this suit are Lelia, Fergus, and Ferdinand Romero, who, with Amelia Romero, were the children of the marriage of Dorcily Romero with his second wife Amelia Hebert. Dorcily Romero's first wife, Elodie Borel, died in the year 1864, leaving two children, Garcia and Policarp. Dorcily Romero died in the year 1891, and his succession was administered by his son, Garcia, as administrator. All the property of the estate was sold for the purpose of paying debts, and several parcels of the real estate were adjudicated to Garcia Romero.

The object of this suit, instituted in May, 1911, is to annul said adjudications, and to have said properties returned to the succession of Dorcily Romero; to recover rentals from defendant for the use and benefit of said succession; and to have the claims of the defendant against said succession decreed fraudulent simulations.

The petition alleged that the defendant was never appointed administrator by order of court, never paid anything for the properties, but retained the price of adjudication on the false and fraudulent pretense that he was a judgment creditor of the succession in a considerable amount. The petition alleged that the judgment in favor of the defendant against his father was rendered by consent on a false and fraudulent accounting based on property which did not belong to the first community.

The answer of the defendant, after a general denial, is substantially as follows:

That the defendant was regularly appointed administrator, and qualified as such according to law.

That defendant's capacity as such cannot be inquired into collaterally.

That defendant, as forced heir, had the legal right to purchase the properties described in the petition, and, being a privileged creditor, had a right to credit his claim against the purchase price.

That the succession was insolvent, and is still indebted to the defendant.

That the first community, at the time of the death of defendant's mother, amounted to $5,590; that his father, after his second marriage, had an inventory made showing his indebtedness to the defendant, and his rights as the heir of his mother was fixed by a regular judgment of the court, which cannot be collaterally questioned.

Defendant pleaded the prescription of one year against plaintiff's attack on said judgment on the ground of fraud.

That all the funds from sales of the succession property were paid out by defendant, and proper vouchers taken.

That the documents and vouchers formed a complete record when most of them were destroyed by fire in the office of the attorneys for the succession.

That defendant's judgment claim against the first community was recognized as just, not only by his father, but by his undertutor, Ovide Hebert, uncle of the plaintiffs; and that outside of the amount credited on said judgment, the defendant has actually paid the succession portion of the purchase price of the property herein claimed by the plaintiffs. Defendant pleaded prescription of ten years against the action to annul the succession sales in question.

There was judgment in favor of the defendant, and the plaintiffs have appealed.

In June, 1867, Dorcily Romero, represented by his attorney, Jos. A. Breaux, Esq., presented a petition to the judge of the parish court of the parish of Iberia, representing that his wife, Elodie Borel, died on April 26, 1867, leaving two children of the marriage, to wit, Jean Garcia and Policarp Romero; that it was necessary for an inventory to be made of the property belonging to the late community; that the petitioner desired to be appointed natural tutor of said minors; and suggested that Ovide Hebert be appointed undertutor. The parish judge ordered that an inventory be made, and appointed two appraisers, as prayed for by the petitioner. The judge also ordered that Dorcily Romero be appointed tutor by nature of his said children, and Ovide Hebert be appointed undertutor. Both qualified by taking the oath prescribed by law. An inventory was made by Jos. A. Breaux, notary public, pursuant to the order of the court; and on that inventory appeared a certain tract of land measuring 130 arpents, valued at $2,225; improvements valued at $800; 20 arpents of cane, valued at $1,000; vehicles, valued at $300; horses, mules, plows, hogs and beeves, the valuation of which aggregated $1,595—making a total of $5,590.

In January 1885, Dorcily Romero filed an account of his administration as tutor of Garcia Romero, which was duly homologated by judgment of the district court of the parish aforesaid on January 30, 1885.

In the preamble to the account it was stated that Garcia was born on February 18, 1860, and that his mother died on April 28, 1864. In the petition filed in June, 1867, noted supra, it is alleged that the mother of the defendant died on April 28, 1867. The tutor's account showed a balance of $1,428.98 due Garcia Romero, after deducting the amount of $245, "paid in land." The account and judgment were recorded on February 20, 1885, in the mortgage book of the parish of Iberia.

It appears that on March 26, 1867, in the succession of Antoine Romero, a judicial sale was made of a number of tracts of land on a credit of one, two, and three years from the date of sale, and that one of these tracts was adjudicated to Dorcily Romero at the price of $2,225. This is the same tract that appears on the inventory of June, 1867, as noted supra.

Dorcily Romero died in the year 1891. On January 2, 1892, Garcia Romero filed his application for appointment as administrator of his father's estate. The petition was signed by "Foster & Broussard, Attorneys." F. Duperier, clerk of the court, thereupon indorsed on the petition an order as follows, to wit:

"Considering the above and foregoing petition, it is ordered that the demand of Garcia Romero for the administration of the succession of his deceased father, Dorcily Romero, be published as prayed for in the New Iberia Democrat, a newspaper published in this parish during the time and in the manner prescribed by law."

"It is further ordered that a commission issue to P. L. Renoudet, or any other competent

notary public in and for Iberia parish, commanding him to make and to take a faithful estimative inventory of all the property, real and personal, rights, and credit belonging to said succession, to be assisted therein by Onesiphore Hebert and Alfred Romero to appraise the said property, and that, upon his furnishing bond according to law and all the formalities had, to be allowed to qualify as administrator of said succession."

An inventory was made by P. L. Renoudet, notary public, pursuant to said order, of all the property belonging to his succession, "and the community lately existing between him and his surviving wife, Mrs. Amelia Hebert."

There appears on this inventory the tract of land containing about 130 superficial arpents, hereinbefore noted as having been purchased by Dorcily Romero from the succession of Antoine Romero in March, 1867. This tract was inventoried as the separate property of the decedent, and was appraised at $1,043.84. Two other small tracts, and an undivided $32/57$ interest in a third tract and some buildings, improvements, and personal property, were inventoried as the property of the community, and were valued, in the aggregate, at $1,561.68.

The inventory contains a statement of the debts of the succession, aggregating $4,007.93, exclusive of interest and of costs of administration. Among the debts appeared the judgment rendered in favor of Garcia Romero.

The financial condition of the estate, as shown by the inventory, was: Assets, $2,-605.52; debts, $4,007.93.

Garcia Romero gave bond as administrator in the sum of $3,500.

The widow, Mrs. Amelia Romero, appeared in March, 1892, and accepted the community with the benefit of inventory.

On April 1, 1892, Garcia Romero, as administrator, presented a petition to the district court, representing that the estate was "largely and almost hopelessly in debt"; that it was necessary to sell all the property of the succession in order to pay the indebtedness; and praying for the usual decree of sale.

The facts set forth in the petition were verified by the affidavit of T. D. Foster, one of the attorneys for the succession, who also swore that the judge was absent from the parish. The clerk of the court thereupon granted an order of sale as prayed for by the administrator.

On June 11, 1892, the succession sale, as ordered, was made at public auction, and the total proceeds amounted to $2,778.70. It appears that the tract of 130 arpents hereinbefore mentioned was, for the purposes of sale, divided into two parts, one of which was adjudicated to Garcia Romero for the price of $404, and the other to Mrs. Amelia Hebert, widow of Dorcily Romero, for the same price. The widow Romero purchased a house and other improvements (presumably on the land adjudicated to her) and all the movable effects, except two items aggregating $27. Garcia Romero purchased several other small tracts of land at the same sale.

It further appears that in August, 1892, Garcia Romero caused some additional property to be inventoried, and procured an order from the district judge for the sale according to law of the remainder of the property of the estate of Dorcily Romero. This order was procured on a sworn statement of the debts of the succession. In September, 1892, a sale at public auction was made pursuant to this order, and the property, including a small tract of land, was adjudicated to Garcia Romero for $346.65.

On the 11th day of March, 1911, Garcia Romero filed his final account as administrator of the succession of Dorcily Romero, showing a balance of $1,008.68 in his favor. Among the privileged claims paid in full appears the item "Widow's homestead, $1,000." This amount appears to have been invested by the widow, the mother of the plaintiffs, in

the purchase of the tract of land and other property which were adjudicated to her.

The plaintiffs in this case filed an opposition to said final account, but subsequently instituted the present suit on practically the same grounds urged in their opposition. The plaintiffs' prayer for judgment is limited to the annullment of the succession sales made to Garcia Romero, and their petition is silent as to the sales made to their mother and to Onesiphore Hebert under the same administration. While plaintiffs represent that "Garcia Romero, without being appointed administrator of said estate, qualified and took possession of the property as such," they have not prayed for his removal from office, or the annulment of his acts of administration. In fact, their pleadings show that from January, 1892, to March, 1911, Garcia Romero has been recognized as administrator of the succession of his father by the court, creditors, and heirs. Plaintiffs themselves recognized the defendant as administrator by filing an opposition to his final account.

[1] Plaintiffs admit in their petition that the defendant "qualified"—that is, gave bond and took the oath of office—but allege that he did so "without being appointed administrator of the estate." Plaintiffs assume that the preliminary order supra is not a sufficient order of appointment, and that there was no subsequent order of appointment. The latter hypothesis is based on the fact that no such order could be found in the files of the succession. Considering the careless manner in which records have been kept in some of the country parishes, the circumstance that, after the lapse of many years, papers that should be in the files cannot be found has but slight evidential value that such papers never existed.

Mr. Broussard and the defendant testified positively that the latter took the oath as administrator, and the record shows that he gave bond. Yet the oath could not be found. Mr. Broussard further testified that, to the best of his knowledge and belief, letters of administration issued to the defendant; that he followed the usual succession proceedings; that it was his honest belief that he complied with the law in every respect; that he didn't remember whether or not he secured a second order of appointment, but believed he did.

Out of five successions, it was shown that Mr. Broussard obtained subsequent orders of appointment in four of them. On the evidence as a whole, we do not think that the plaintiffs have shown with legal certainty that there was no final order of appointment. The regularity of judicial proceedings is presumed.

In Miguez v. Delcambre, 113 La. 61, 36 South. 888, there was an order for an inventory, but no order for the publication of the application for administration, no evidence of publication of the same, and no order of appointment on file, or recorded in the judicial record book.

The next contention of the plaintiffs is that the probate sales to the defendant should be annulled for nonpayment of the purchase price. Anticipating the defense that the defendant was a judgment creditor of the succession of his father, and, as such, had the right to offset the price with the amount due him, the plaintiffs allege that the defendant never was a creditor of his father, and that the judgment rendered in his favor in 1885 was a consent decree and a fraudulent simulation.

As stated supra, Dorcily Romero was appointed tutor of his minor sons, Garcia and Policarp, in the year 1867, and an inventory of the property of the first community was taken. It was stated in the inventory that the tract of 130 arpents was purchased during the existence of the first community, but not paid for. In January, 1885, Dorcily

Romero, tutor, rendered his final account to Garcia Romero, who accepted service of and waived citation and delays. On January 30, 1885, judgment was rendered as follows:

"The law and the evidence being in favor of Garcia Romero, it is ordered and decreed that judgment be, and the same is, hereby entered in his favor against the tutor, Dorcily Romero, and let the foregoing account be, and the same is, hereby homologated and made the judgment of the court."

The account and judgment were duly recorded in the mortgage book of the parish of Iberia on February 25, 1885. On the face of the record, the judgment was not rendered by consent, but by reason of the law and the evidence. The same judgment was recognized in the inventory of the succession of Dorcily Romero taken in January, 1892, and was questioned by no one until the plaintiffs started this litigation in the year 1911. The widow of Dorcily Romero, the mother of the plaintiffs, did not question the judgment, but, in behalf of herself and her four minor children, claimed the allowance of $1,000 reserved to the widow or minor children, or both, when left in necessitous circumstances. Civil Code, art. 3252.

A judgment of a competent court rendered on the law, and the evidence cannot be treated as a simulation.

The judgment in question is supported by the inventory of 1867. The parol evidence shows that Dorcily Romero, at the date of the death of his first wife, had a considerable amount of movables, and the defendant testified that his father had money, which he kept buried. According to the recitals of the inventory, the tract of land described therein had not been paid for in 1867. The mortgage securing the purchase price was canceled in July, 1883. There is nothing to show out of what funds the price was paid. It may have been paid out of community funds not inventoried, or the community property may have been sold for more than the appraised value as per inventory. In the tutor's account of 1885 there was no charge against the defendant for his pro rata of said price. This circumstance per se suggests a settlement, rather than a fraudulent simulation.

Plaintiffs are, however, not seeking a settlement of accounts, but sue to annul judgment on the ground of fraud and simulation.

The defendant had a real and substantial demand against his father and tutor. In such cases it has been held that the prescription of one year applies.

In Van Wickle v. Garret and Husband, 14 La. Ann. 106, it was held that the action of the judgment creditor of the husband to annul a judgment of the wife against the husband, on the ground of fraud, is prescribed in one year from the date of the wife's judgment; she having a real demand.

The same doctrine was affirmed in Bourlon v. Waggaman, 28 La. Ann. 482, where "the plaintiff in execution attacked the validity of the judgment of separation, because fraudulently rendered; because rendered by consent; because rendered upon insufficient allegations and without proof."

[2] A judgment may be annulled when obtained through fraud or ill practices on the part of the party in whose favor it was rendered, C. P. 607. Where a judgment has been obtained through fraud on the part of the plaintiff, the action for annulling such judgment must be brought within the year after the fraud has been discovered. C. P. 613. In the case at bar, the judgment was obtained on the acts and admissions of the tutor of the plaintiffs, who certainly could not plead ignorance of his own acts. Prescription, therefore, ran against the tutor from the date of the judgment, and his action to annul on the ground of error or fraud was prescribed in his lifetime.

The right of action of the tutor's forced heirs to annul his contracts is restricted to

"simulated contracts." Civil Code, art. 2239. Surely the defendant cannot be charged with fraud in accepting as true the account rendered to him by his tutor.

It is therefore ordered that the judgment below be affirmed, and that plaintiff pay the costs of this appeal.